**GLOBE INDEMNITY CO. v. ESTRADE.***

No. 16863.

Court of Appeal of Louisiana. Orleans.

April 4, 1938.

Jas. W. Hopkins, of New Orleans, for appellant.

Quintero & Ritter, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit by a bonding company against an indemnitor to recover the amount paid by the bonding company in compromise of a suit brought by the obligee in the bond against the principal and the bonding company. The defense of the indemnitor is that, in the first place, the indemnity agreement did not give to the bonding company the right to make any payment or compromise it might see fit to make, and that, in the second place, while the suit was pending and before the compromise was effected, the bonding company bound itself by special agreement to await the outcome of the suit.

There was judgment in favor of the indemnitor; the district judge having reached the conclusion that, whatever rights may have existed under the original indemnity agreement, that agreement had been superseded by a later special agreement, which provided that the first suit should be defended without prejudice to the rights of the indemnitor or of the surety company inter sese. From that judgment the surety company has appealed.

On May 2, 1932, Globe Indemnity Company, as surety, executed a contract bond in the sum of $3,600 for Estrade & Broas

*Rehearing denied 180 So. 838.

as principals. The contract provided for work on buildings being erected in Biloxi, Miss., by T. A. Pittman, Inc., the general contractor. Estrade & Broas was a partnership; Herman J. Estrade being one of the partners. When the bond was applied for, the members of the partnership, in connection with the application, executed an *indemnity agreement* in which they undertook to indemnify and hold harmless the surety, Globe Indemnity Company, against any loss resulting from breach of the said contract. Before completion of the work and for a cause which is not yet established, the contractors, Estrade & Broas, discontinued work and T. A. Pittman, Inc., the general contractors for whom Estrade & Broas had undertaken to do the work, contending that the contract had been unlawfully breached by Estrade & Broas, brought suit against the partnership, the individuals composing it, and the surety on the bond, to wit, Globe Indemnity Company. The amount claimed was $2,293.52, with interest and attorney's fees. When the surety was cited to defend the suit, acting under the stipulation in the application or in the indemnity agreement, or both, it, in writing, called upon the partnership and the individual members to defend the said suit and to hold it, the surety, "free from any loss therein." This call was made by letter dated April 20, 1933.

It is evident that · at that time there had already arisen between the surety and the partnership a controversy concerning the cause of the default under the contract. Counsel for plaintiff, in his brief, refers to this controversy as follows: "This controversy arose from the contention of Estrade & Broas that they had quit the sub-contract by the instruction of some representative of the Globe."

To clarify this it may be said that apparently the surety contended that, if there was fault and if there had been an unlawful breach, the fault was on the part of the contractor, Estrade & Broas, and the contractor contended that the default had been instigated by the surety.

We first direct our attention to the fact that at that time—when the Pittman suit was filed—there was a controversy between Estrade & Broas and the surety company, both of these parties taking the position, as against the Pittman Company, that there had been no unlawful default, but each of the parties taking the position,

inter sese, as against the other party, that if there had been an unlawful default it had resulted from the fault of the other. In this situation Estrade & Broas felt that if they, on behalf both of themselves and the surety, defended the suit brought by the Pittman Company, · they might later be estopped to contend, as against the surety, that the breach had been caused or instigated by the surety, and they therefore suggested to the surety, through their attorneys, that they would defend that suit if the said surety would agree that there should result no prejudice to the rights of either concerning. the controversy between them. This suggestion was contained in the following letter:

"April 20, 1933.

"Globe Indemnity Company,
"721 Canal Bank Building,
"New Orleans, Louisiana.
"Gentlemen:
"In re: T. A. Pitman, Inc., v. Estrade and Broas et al. No. 201,620.

"Messrs Estrade and Broas have employed us to defend them in the above case. We understand that under the terms of your bond you have called upon Estrade and Broas to defend the case for you at their cost and expense. This is agreeable to them and to us except for the fact that there may be an issue between Estrade and Broas on the one hand and yourselves on the other with regard to the responsibility for the default, which may necessitate, in the ·event that plaintiff recovers from all defendants, your asking for judgment against Estrade and Broas and Estrade and Broas asking for judgment against you. If we can eliminate this controversy from this case and reserve the rights of all parties on this question, we would then be in a position to defend the suit for all defendants without cost and expense to you.

"In connection with this reservation, it is our suggestion that we could agree to have that issue determined in a simple proceeding by rule after the judgment is paid, if, of course, the plaintiff recovers.

"Please let' us hear from you as soon as possible in order that we may be able to prepare the pleadings immediately.

"Sanders, Baldwin, Viosca & Haspel."

The surety company agreed to this suggestion, and under date of November 1, 1933, in order to put the agreement in writing, the partnership, Estrade & Broas,

addressed to the surety company another letter in which was set forth an outline of the facts above recited and in which there was contained a provision that the defense by Estrade & Broas of the said suit should be "upon the distinct and specific condition that this defense of that suit shall be without prejudice to the position of either party in the controversy between you and ourselves and that the ultimate responsibility, as between you and ourselves, for whatever judgment T. A. Pittman, Inc. may recover in that suit, shall be left open for future determination."

Under date of November 6th, the surety company accepted the terms of the said agreement and the partnership proceeded with the defense of the suit, and its attorneys, on behalf of both the partnership and the surety, filed answer in that suit. However, the surety, through its adjuster, negotiated directly with the Pittman Company, and, on December 22, 1933, while that suit was still pending, wrote to the partnership, Estrade & Broas, that it had arranged a settlement of the suit for $1,000. It called upon the partnership to furnish that sum to be used in effecting the settlement. The partnership made no response to this demand, and, on December 30, 1933, the surety consummated the settlement and itself paid to plaintiff the said $1,000. On September 15, 1936, it filed this suit against Estrade, as indemnitor, and claimed, in addition to the amount expended in settling the Pittman suit, $75 as a fee paid to its attorneys for services in connection with the compromise of the other suit, asserting that, under the indemnity agreement, it was entitled to reimbursement of any amount so expended.

It is asserted on behalf of the surety, plaintiff in this suit, that under the indemnity agreement it had at all times the right to compromise any claims against its principal and to immediately claim from the indemnitor any amount so paid, and that this right to compromise was not affected by the negotiations had with the indemnitor and the agreement accepted on November 6th.

The indemnitor contends that no such right ever existed; that the right of the surety against the indemnitor would only have arisen after an actual loss had been sustained, and, furthermore, that whatever may have been the surety's original right under the indemnity agreement, that

agreement was superseded by the subsequent agreement in which it was understood that the Pittman suit would be defended without prejudice to the rights of any parties to the original indemnity agreement, but that those rights should "be left open for future determination."

In connection with the contention that the indemnity agreement gave the surety the right at any time to make claim for any loss, it offered in evidence the receipt and release executed by the plaintiff in the Pittman suit and pointed to this receipt as proof that it had sustained the loss. It also showed that it had paid to its attorneys $75, and pointed to that payment, also, as evidencing a "loss."

It is true that there is authority for the view that a surety which has obtained such an indemnity agreement may, on proper occasion, make a settlement with the principal claimant and then claim that a loss has been sustained and seek reimbursement from the indemnitor. And there are authorities holding that this right exists regardless of whether there is proof that there would actually have been a loss but for the settlement, and regardless of whether a loss is established through litigation.

In U. S. Fidelity & Guaranty Company v. Jones, 87 F.2d 346, 348, the Circuit Court of Appeals for the Fifth Circuit said: "From the foregoing, it follows that the ultimate liability of appellant was not a condition precedent to its right to recover on the indemnity contract."

In American Bonding Company of Baltimore v. Alcatraz Construction Company, 202 F. 483, 485, the Circuit Court of Appeals for the Second Circuit had this to say on the subject: "The provisions of the agreement to the effect that the vouchers and other evidences of loss should be conclusive upon the question of liability, were reasonable and valid. Such provisions in an indemnity agreement are obviously necessary to give a surety company the right which it should have under certain circumstances to make settlements."

Defendant contends, however, that the absolute right to compromise does not always exist, and that it is only where the circumstances justify it that the surety may by compromise foreclose the rights of the indemnitor. Defendant points out that in the Jones Case, supra—relied upon by plaintiff—the court distinctly held that the right

**192**

exists only where there is no bad faith, collusion, or fraud, or other facts which show that the compromise would work prejudice to the other party. And defendant further calls attention to the fact that even in American Bonding Company v. Alcatraz Construction Company, supra, it was not held that always, where there is such an indemnity agreement, there is a right to compromise and thus make the indemnitor liable, but that it was said that that right should exist "under certain circumstances."

We find it unnecessary to reach a conclusion on this interesting question because we believe it proper to pitch our decision on the effect of the agreement concerning the defense of the Pittman suit and the reservation of the rights of all parties. Whatever may have been the rights of the surety under the indemnity agreement, it, on November 6th, agreed not to do anything which might prejudice the interests of the partnership and then immediately took a step which, if its contention is sound and if it is now upheld, at once and conclusively fixed and established those rights or obligations. If there was a controversy as to where any possible loss should fall, then the surety, after agreeing to leave that question for future determination, made it impossible that that question might in the future be determined because it did something which, if it was acting within its rights, placed that loss irrevocably upon the shoulders of the other party. At that time the surety had, in the other suit, taken the position that there had been no unlawful default. In the answer in which it was made a party defendant, it denied that there had been any such unlawful default. We must remember that the surety had conceded that there was pending a controversy between itself and the partnership, which, if ultimately determined favorably to the partnership, would have prevented the surety's proceeding against either the partnership or the partnership's indemnitors for any loss which it might be required to pay, because it clearly appears that the partnership contended that the default, if one had occurred, had resulted from the action of the surety. Bearing these things in mind, it is obvious that the settlement made by the surety had a staggeringly final and fatal effect upon that undetermined controversy. It at once put an end to the right of the partnership to defend the other suit, and, if the surety be correct in its position, it put an end to the controversy between itself and the partnership and made the partnership liable to it.

If, then, in view of the terms of the agreement, which, on November 6th, it accepted, the surety chose to accept the compromise which it negotiated, it did so on its own responsibility and it cannot now be heard to present any claim against the original indemnitor. That agreement, as was well said by our brother of the district court, was superseded by the subsequent agreement under which it was understood that the suit would be defended and that the respective rights of the partnership and the surety would await determination of that controversy.

Plaintiff maintains that in any event the amount paid to attorneys for advice in connection with the compromise settlement should be recovered by it because of the fact that in the indemnity agreement there was a stipulation to the effect that the indemnitors would immediately, on call, "place the surety in funds to meet every such claim, * * * counsel fee, * * *" etc. But the fee, which is admittedly a fair one so far as the amount is concerned, was incurred in connection with the making of the compromise settlement, and since, in view of the agreement to which we have referred, there was no authority to make the settlement, we think that it follows that there was no authority to incur the attorney's fee.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

McCALEB, J., absent.